HEUEL v STEIN et al.   (No. 5890.)

(Supreme Court, Appellate Division, First Department.   December 11, 1914.)

1. INFANTS (§ 81*)—GUARDIANS AD LITEM—APPOINTMENT.
    Under rule 49, General Rules of Practice, providing that no person shall be appointed guardian ad litem unless he has no interest adverse to that of the infant, an attorney representing other devisees under a will should not be appointed guardian ad litem for infant devisees, where the clients of the attorney were claiming interests which would diminish the share of the infants.
    [Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 222–229; Dec. Dig. § 81.*]

2. INFANTS (§ 81*)—GUARDIAN AD LITEM—APPOINTMENT—VALIDITY.
    Though an attorney appointed as guardian ad litem was not qualified, because representing interests distinctly adverse to those of the infant, the infant is bound by the appointment.
    [Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 222–229; Dec. Dig. § 81.*]

3. INFANTS (§ 83*)—GUARDIANS AD LITEM—COMPENSATION.
    An attorney, appointed as guardian ad litem for infant devisees, who was representing interests adverse to them, and who did not protect their interests at trial, but acted in an adverse character, is not entitled to compensation; and the infants, upon reaching their majority, may compel restitution of fees which he induced the executors to pay and to charge against their interests.
    [Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 232–235; Dec. Dig. § 83.*]

4. JUDGMENT (§§ 688, 692*)—CONCLUSIVENESS—PERSONS CONCLUDED.
    Where a guardian ad litem of infant devisees, who had not performed services for their benefit, and who was really acting for adverse parties, induced the executors to pay him a fee, a judgment of the Surrogate's Court, authorizing the executors to deduct such fee from the share of the infants, while conclusive upon the infants, as against the executors, is not conclusive against their right to recover from the guardian the amount paid.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1211, 1215; Dec. Dig. §§ 688, 692.*]

5. INFANTS (§ 83*)—GUARDIANS AD LITEM—COMPENSATION—SUMMARY ORDER.
    Where an attorney, who was representing interests adverse to infant devises, was appointed their guardian ad litem and received compensation from the executors, which was deducted from the share of the infants, summary proceedings may be had to compel the attorney, before

─────────────────────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

settlement of the estate, to return such compensation, for he was not only an officer of the court, but occupied a fiduciary relation toward the infants.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 232-235; Dec. Dig. § 83.*]

Clarke and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Emil Heuel, as executor of the estate of Conrad Stein, deceased, against Alexander Stein, as executor, and others, in which Josephine Stein Uterhart and another petition for an order revoking and setting aside any provision made for the compensation of Emanuel J. Myers as guardian ad litem, and requiring him to make restitution of the amount already received. From an order denying the petition, petitioners appeal. Order reversed, and motion granted, to the extent of requiring restitution.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Uterhart & Graham, of New York City (Frederic R. Coudert, of New York City, of counsel), for appellants.

Emanuel J. Myers, of New York City, pro se.

INGRAHAM, P. J. This action was commenced in the summer of 1900, by one of the executors of the last will and testament of Conrad Stein, deceased, to obtain a construction of the will and to determine what real property was devised to the defendants Alexander Stein and Conrad Stein, two sons of the testator, by the will. In addition to these two sons, the testator left him surviving four children, who were infants. These two sons claimed that under the will they were entitled to several pieces of real property, which the plaintiff, as one of the executors of the will, disputed. The substantial contest, therefore, was between these two sons, on the one side, and the four infants, on the other.

On August 24, 1900, the complaint was served upon the firm of Myers, Goldsmith & Bronner, who admitted service of the complaint as attorneys for the defendants. Josephine Stein, the widow of the testator and the mother of the four infants, two of whom were over 14 years, and two of them under 14 years of age, presented a petition to the Supreme Court, executed by herself as the general guardian and by the two infants who were over 14 years of age, asking that Emanuel J. Myers, of the firm of Myers, Goldsmith & Bronner, be appointed as guardian ad litem for the infants. With that petition Mr. Myers presented an affidavit stating that he was an attorney and counselor at law, residing in the city of New York, that he had no interest adverse to those of the four infants, who desired to have him appointed as guardian ad litem, and that he was not connected in business with any attorney or counsel whose interests are adverse to those of said infants. On that petition and affidavit, on the 6th of September, 1900, the court appointed Mr. Myers as guardian ad litem of said infants. Mr. Myers, as guardian ad litem, interposed an answer

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the infants, alleging that they and each of them were strangers to all and singular the things set forth in the complaint in this action, saving and excepting they were children of Conrad Stein, deceased, who died leaving a last will and testament, and that they were severally infants under the age of 21 years, and claimed such interest in the premises as they were severally entitled to, and the said defendants by their guardian ad litem submitted their several rights and interests in the matters in question in this action to the protection of the court. This answer was signed by Emanuel J. Myers, as guardian ad litem of the infants.

The defendants Alexander Stein and Conrad Stein served an answer to the complaint, claiming they were entitled to certain real estate as devisees of the testator, and that answer was subscribed by Goldsmith & Bronner, as attorneys for the defendants—two of the partners of Emanuel J. Myers. So far as appears from the record, the rights of these infants, as against their two brothers, were not insisted upon at the trial. Emanuel J. Myers, although guardian ad litem for the infants, seemed to have appeared upon the trial on behalf of all of the defendants and to have tried the case for them. In his answering affidavits, he states that it was understood that Judge Gross should appear for and represent Josephine Stein, as executrix and individually, and Alexander Stein, as executor; that Goldsmith & Bronner should appear for and interpose an answer in behalf of Alexander Stein's and Conrad Stein's individual interests, setting up their construction of the devise and bequest in the will; that A. C. Cropsey, who was associated with Judge Gross, should appear for and interpose an answer for Josephine Stein, individually and as testamentary guardian for the infant children of the testator, and that Emanuel J. Myers should appear as guardian ad litem for the infant children of the testator. He then stated it was understood and believed that the interests of these parties were not adverse, inimical, or hostile, and that the evidence which would be interposed in behalf of the defendants would be the same, and that the oral evidence to be submitted was showing the nature, character, and extent of the brewery plant, as it was considered that it was the express wish of the testator, as stated in the will, that his sons should carry on the business. He further stated that Judge Gross desired him to prepare and conduct the trial of the cause, and in particular this question of the identity of the property constituting the "brewery business," in view of his special knowledge of the "brewery plant," and that all the questions raised by the complaint were to be fairly presented to the court, with the view that the will should be fairly, honestly, and impartially construed in the light of all circumstances showing the nature and character of the estate, and throwing any light on the testator's intention in the "devise of the brewing business." The cause was tried at the Special Term of the Supreme Court presided over by Mr. Justice Bischoff, who rendered a decision, sustaining the position taken by Judge Gross and Emanuel J. Myers as to the validity of the trusts contained in the will, that Mrs. Josephine Stein was not required to elect, but entitled to her right of dower, as well as to the testamentary provisions, and further deciding that certain real estate was part of

the brewery business, and against the contention of Alexander Stein and Conrad Stein, which had been argued by Mr. Myers, although opposed to the interest of his wards, as to the four vacant lots and the foreman's house, claimed by them as part of the "brewery plant."

[1, 2] It is quite clear upon this record that Mr. Myers was not a competent person to be appointed guardian ad litem, within the provisions of rule 49 of the General Rules of Practice. His firm had appeared for Alexander Stein and Conrad Stein, whose interests were distinctly adverse to those of the infants, and his affidavit, upon which he was appointed guardian ad litem, was, to say the least, misleading. The will of the testator was indefinite as to the real estate which was included in the devise to these two sons, and these two sons' claim to certain real property of the testator as included in the devise to them was adverse to those of the other children of the testator, as they would have an interest in all of the real estate which the testator owned, which was not included in the bequest to these two sons. I agree, however, with my Brother CLARKE that this did not make the appointment of Mr. Myers as guardian ad litem void, and the judgment thus entered would bind the infants, as well as the adult heirs of the testator. See Parish v. Parish, 77 App. Div. 267, 78 N. Y. Supp. 1089, on appeal 175 N. Y. 181, 67 N. E. 298.

[3-5] Mr. Myers then made two applications to the Supreme Court for an order fixing his compensation, under rule 50 of the General Rules of Practice; but neither of the applications resulted in an order in compliance with such rule, and therefore it would appear that Mr. Myers was not entitled to receive any compensation as guardian ad litem, and, if the facts which were submitted had been before the court on those applications, it is clear that no award would have been made. It is also clear that Mr. Myers rendered no services to the infants as against the claims of their brothers to these pieces of real property. What he did was to appear as counsel for the adult defendants. So Mr. Myers was entitled to no payment out of the estate of the infants for his services as guardian ad litem.

Having failed to obtain an order which would justify such a payment, he persuaded the executors of the testator, without any order of the court, to pay him the sum of $5,363.90. That money seems to have been paid out of the general assets of the estate, as at that time no property had been set apart for the infants. Subsequently, however, the executors presented to the surrogate an accounting of their proceeding, in which these infants were parties, represented by guardian ad litem. In that accounting there was a credit claim for this payment of $5,363.90 to Mr. Myers, as guardian ad litem. I cannot find that the decree of the surrogate is a part of these proceedings; but it is stated that the decree contained a provision that the said sum of $5,363.90, paid to Emanuel J. Myers as guardian ad litem of the infant children, should be paid out of "the several distributive shares of the said Josephine Stein, the younger, Paula Stein, Ella Stein, and Carl Stein, in equal proportions, share and share alike, when the trust period expires at the majority of the youngest child, Carl Stein, or his death before majority." We must assume that this

decree of the surrogate is res adjudicata as between these parties, and that as between the infants and the executors the infants are chargeable on the final distribution of the estate with the proportionate amount of this sum of money, illegally and improperly paid by the executors out of the estate. But Mr. Myers was not a party to that proceeding, nor was his right to retain that sum adjudicated as between himself and his wards, the infants.

Undoubtedly the executors have a right to charge that payment to the wards upon the final distribution of the estate; but there is nothing in this decree, as I view it, that, as between Mr. Myers and the wards, is an adjudication which prevents the court from ordering Mr. Myers to repay to his former wards the money wrongfully paid to him and charged to them on the final distribution of the estate. He stands before this court as an attorney and counselor of this court, and he was appointed by this court as guardian ad litem on an affidavit containing statements which were misleading. He acted as guardian ad litem through the trial of the action which determined the right of his wards to certain real property, without acting solely for the wards against their brothers, who claimed an interest in the real property adverse to that of the wards, and for that he has received from the infants a sum of money to which he clearly was not entitled. Under such circumstances, it seems to me that the authority of this court in its control over its attorneys and counselors at law, when the infants arrive at age and before the final distribution of the estate, is sufficient to require the attorney to repay the sum of money which he has received without legal authority. The notice of motion is that Mr. Myers be required to repay to the executors the amount which he has received from them as compensation for the service rendered as guardian. To grant the motion in this form would be, in effect, to reverse or modify the surrogate's decree, which, as has been said, is valid and conclusive as between the executors and the petitioners. It is not conclusive, however, as between Mr. Myers and his former wards.

The notice of motion also asks for "such other and further relief as may seem to the court just and proper in the premises," and under this clause we are in a position to make an order adjusting the rights of the parties, all of whom are before the court, which has also before it all the facts in the case. Mr. Myers is not only an officer of the court by virtue of his office as attorney and counselor at law, but in his relation to the infants he was especially appointed as the representative and officer of the court to protect the interests of its wards. He is therefore subject to the summary jurisdiction of the court. He has been guilty of procuring, under circumstances which we cannot approve, a large sum of money, to which he is not entitled and which has been or must be paid by his wards, who until now have had no opportunity to contest with him the propriety of the payment to him. Under these circumstances it is well within the power of the court to require him to make restitution by repaying to his former wards the sums which he received from the executors as compensation for his services as guardian ad litem, with interest.

To this extent the motion will be granted, the order appealed from being reversed, with $10 costs and disbursements. Settle order on notice. ·

LAUGHLIN and SCOTT, JJ., concur.

CLARKE, J. (dissenting). 1. Rule 49 of the General Rules of Practice provides that:

"No person shall be appointed guardian ad litem, either on the application of the infant or otherwise, unless he be the general guardian of such infant, or is fully competent to understand and protect the rights of the infant, and has no interest adverse to that of the infant, and is not connected in business with the attorney or counsel of the adverse party."

In Parish v. Parish, 77 App. Div. 267, 78 N. Y. Supp. 1089, in an action in partition, the attorney for the plaintiff was a clerk in the office of the firm of lawyers who appeared for the adult defendant, and a member of this firm appeared for some of the infant defendants, while another clerk in their office appeared for others of the infant defendants as guardians ad litem. Mr. Justice O'Brien said:

"Rule 49 of the General Rules of Practice, having for its object the protection of infants, must, so far as its language is susceptible of extension, be construed in its broadest sense; and, so construed, we think the term 'connected in business' with the attorney or counsel of the adverse party contemplates any kind of business association, and therefore would include clerks, as well as partners. What the rule was intended to secure is the appointment of a guardian who has no business association with those representing adverse interests, so that the infant might obtain the benefit of the free and independent judgment of the one selected to protect his rights. A similar construction, we also think, must be given to the expressions in the rule, 'interest adverse' and 'adverse party.' So construed, the rule is not to be limited to cases wherein, as the result of an adjudication, it has been held that the interests of the infants are or are not adverse, but is applicable as well to cases where the question of whether the interests of the infants are or are not adverse is involved."

On appeal (175 N. Y. 181, 67 N. E. 298) Cullen, J., said:

"It may be assumed that as to certain of the guardians the affidavits show that their appointments were made in violation of the rule, and it may also be conceded that the proper interpretation of those rules should largely rest in the judgment of that court by which they were formulated. Hence, had the court below on a direct application to vacate the orders appointing those guardians, or on an appeal from those orders, set the appointments aside, we should in no way have interfered with their determination. * * * Doubtless it was the duty of the trial court to appoint as guardian for each of the infants a person competent to protect his interests and not connected with the attorney or counsel for the adverse party."

It is plain, therefore, as it seems to me, that as Goldsmith and Bronner, partners of Mr. Myers, represented Alexander and Conrad Stein, the devisees, who were claiming the whole of the property in controversy, Mr. Myers' appointment as guardian ad litem of the four infants was in violation of said rule. The infants' interests required opposition to that of their elder brothers and the maintenance of the proposition that this property should be determined not to have been devised to them, but to have passed into the residuary estate, of which the infants were the beneficiaries. Mr. Myers was clearly connected

in business with the attorneys of the adverse parties. But the Court of Appeals proceeds:

"But who was to determine these facts and qualifications? Plainly, the court to whom the application was made. The order of the court appointing the guardian ad litem recites that it satisfactorily appears to the court that the person appointed had no interest adverse to that of the infant defendants and that he was not in business with the attorney or counsel for the plaintiffs or any adverse party. If the court erred in this determination, it did not deprive the court of jurisdiction or render the judgment voidable, but, like any other error, was to be corrected only by direct attack; that is to say, by appeal or by motion to set the order aside."

Final judgment was entered in the action in which Mr. Myers was appointed guardian ad litem January 16, 1902. No appeal was taken from the order appointing the guardian ad litem, and no motion was ever made, or is now made, to vacate or set aside said order.

2. Rule 50 of the General Rules of Practice provides that:

"It shall be the duty of every attorney or officer of the court to act as the guardian of any infant defendant, in any suit or proceeding against him, whenever appointed for that purpose by an order of this court. And it shall be the duty of such guardian to examine into the circumstances of the case, so far as to enable him to make the proper defense, when necessary for the protection of the rights of the infant, and he shall be entitled to such compensation for his services as the court may deem reasonable. But no order allowing compensation to guardians ad litem shall be made, except upon an affidavit to be made by such guardian, if an attorney of the court, * * * showing that he has examined into the circumstances of the case, and has, to the best of his ability, made himself acquainted with the rights of his ward, and that such guardian has taken all the steps necessary for the protection of such rights, to the best of his knowledge, and as he believes, stating what has been done by him for the purpose of ascertaining the rights of the ward."

There is no order of the Supreme Court, which appointed Mr. Myers guardian ad litem in this action, fixing or allowing any compensation for his services rendered herein. It is obvious that the language of the rule requiring an order of the court refers to the court in which the litigation was pending, in which the guardian was appointed, where the order appointing him was made, and where the services were rendered. This is emphasized by the fact that two applications to the court were made for such an order, and that no such order exists. So much of the notice of motion, therefore, as asks for an order revoking, canceling, and setting aside any provisions heretofore made herein for the compensation of said Emanuel J. Myers as guardian ad litem must fail, because there is no order made herein providing for compensation.

3. Not having succeeded in obtaining an order fixing his compensation from the Supreme Court, Myers obtained from the executors of the estate of Conrad Stein, without the order of any court, the sum of $5,363.90. Thereafter, in the Surrogate's Court, in the accounting by the executors of their decedent's estate, said payment was allowed to them, and the provision was inserted in the decree passing their accounts that said sum should be paid out of and from the several distributive shares of the four infants in equal proportion, share and share alike, when the trust period expires at the majority of the youngest child, which period arrived in November, 1912. As between

the accounting executors and the said infants, who were all parties to the accounting proceedings, said decree is res adjudicata. Said decree never having been vacated or appealed from, and still existing in full force and effect, I am not able to perceive that this court in this proceeding has any power or authority over said final. decree of the Surrogate's Court which permits it to make any order in the premises affecting said provision. What is presented here is whether, upon summary application by way of petition, the Supreme Court has the power to direct an attorney, who was appointed a guardian ad litem in a pending litigation in said court in 1900, in a litigation which was concluded by the final judgment entered in 1902, who did not procure an order of this court fixing his compensation for services, but who received such compensation from the executors of an estate, upon whose final accounting a decree was entered allowing said payment, to make restitution to the infants, who, by the terms of said decree, are now called upon to pay the amount thereof to the trust estate. I think that the guardian was erroneously paid for his services as guardian, because he never obtained an order of the Supreme Court fixing and allowing his compensation. But he received payment from the executors, and their account showing such payment was passed and approved by the Surrogate's Court. I fail to find·upon the facts and circumstances disclosed upon this record warrant for summary proceedings of restitution by order.

The orders appealed from should be affirmed, with $10 costs and disbursements to the respondent.

DOWLING, J., concurs.